Joseph M. Alioto (SBN 42680)
Theresa D. Moore (SBN 99978)
Jamie Miller (SBN 271452)
ALIOTO LAW FIRM
One Sansome Street, Suite 3500
San Francisco, CA 94104
Telephone: (415) 434-8900
Facsimile: (415) 434-9200
Email: jmiller@aliotolaw.com
Email: tmoore@aliotolaw.com

Lingel H. Winters, Esq. (State Bar No. 37759)
LAW OFFICES OF LINGEL H. WINTERS
275 Battery Street, Suite 2600
San Francisco, California 94111
Tel: (415) 398-2941
Fax: (415) 393-9887
Email: sawmill2@aol.com

Attorneys for Plaintiffs
And All Others Similarly Situated
[ADDITIONAL COUNSEL APPEAR ON LAST PAGE]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| JOHN NYTL, an individual on behalf of himself and all those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>JP MORGAN CHASE & CO; J.P. MORGAN BANK, N.A.; BANK OF AMERICA CORPORATION; BANK OF AMERICA N.A.; HSBC FINANCE CORPORATION; HSBC BANK USA, N.A.; HSBC NORTH AMERICAN HOLDINGS, INC.; HSBC HOLDINGS, PLC; CITIGROUP, INC.; UBS AG, BARCLAYS PLC; ROYAL BANK OF SCOTLAND<br><br>Defendants. | Case No:<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE SHERMAN ACT (*15 USC § 1*), THE CALIFORNIA CARTWRIGHT ACT (BUS. & PROF. CODE *§ 16700 et seq.*) AND THE CALIFORNIA UNFAIR COMPETITION LAW (BUS. & PROF. CODE *§ 17200, et seq.*)**<br><br><u>**DEMAND FOR JURY TRIAL**</u> |

CLASS ACTION COMPLAINT

Defendants and their co-conspirators in this case have extracted substantial monies in price of foreign currency exchange rate overcharges pursuant to their conspiracy, combination, contracts and agreements to rig and fix the prices foreign currency exchange rates.

Plaintiff John Nytl brings this action, on behalf of himself and all other persons, similarly situated, who exchanged foreign currency at exchange rates fixed by Defendants pursuant to their conspiracy, combination and agreement to fix foreign currency exchange rates and who paid inflated overcharges therefor and have been injured by the conspiracy bring this action under Section 4 of the Clayton Act (15 U.S.C. § 26) to obtain damages, treble damages, restitution, and injunctive relief against Defendants Bank of America Corporation; Bank of America, N.A.; (hereafter "Bank of America"); JP Morgan Chase & Co; J.P. Morgan Bank, N.A. (hereafter "J.P. Morgan Chase"); HSBC Finance Corporation; HSBC Bank USA, N.A.; HSBC North American Holdings; HSBC Holdings, plc ("HSBC"), Citigroup, Inc.; UBS AG, Barclays PLC and Royal Bank of Scotland due to their violations of section 1 of the Sherman Act (15 U.S.C. § 1) and Defendants' violations of Sections 16700 et seq., 16720 et seq., of the California Business & Professions Code (the "Cartwright Act") and Sections 17200, et seq. of the California Business and Professions Code (the "Unfair Competition Act" or "UCL") and Unjust Enrichment. Plaintiffs demand a trial by jury, allege and complain as follows:

1. Plaintiff on behalf of a nationwide class of consumers who have been injured by rigged foreign currency exchange rates, similarly situated, seek injunctive relief, and monetary damages, including treble damages, to compensate them for overcharge damages based on price-fixed, rigged foreign currency exchange rate overcharges caused to them by the conspiracy among Defendants to set, fix and establish the prices of foreign currency exchange rates resulting in supracompetitive foreign currency exchange rate overcharges imposed on and paid by plaintiffs and the class to Defendants and their co-conspirators. This price-fixing conspiracy is ongoing and overcharged dollars are extracted from Plaintiffs and the Class members pursuant to the conspiracy on a continuing basis.

///

///

2. This case is about the continuing combination, agreement and conspiracy to set, fix and establish foreign currency exchange rates agreed upon by Defendants, resulting in overcharges, that were forced upon and paid by Plaintiffs and the class directly to Defendants and their co-conspirators.

3. As Bank of America Corporation; Bank of America, N.A.; (hereafter "Bank of America"); JP Morgan Chase & Co; J.P. Morgan Bank, N.A. (hereafter "J.P. Morgan Chase"); HSBC Finance Corporation; HSBC Bank USA, N.A.; HSBC North American Holdings; HSBC Holdings, plc ("HSBC"), Citigroup, Inc.; UBS AG, Barclays PLC and Royal Bank of Scotland are competitors, their horizontal combination, agreement and conspiracy to set, fix and establish foreign currency exchange rates nationwide in the 50 United States plus the District of Columbia is per se illegal and in violation of the Sherman Act, the California Cartwright Act and the California UCL.

4. Defendants are members of and participants in and enablers of a continuing combination, agreement and conspiracy to set, fix and establish inflated supracompetitive foreign currency exchange rates in transactions throughout the 50 United States, plus D.C. that has operated continuously since at least January 1, 2007. Defendants have set, fixed and established foreign currency exchange rates and imposed them on plaintiffs and the class. In its plea agreement dated May 20, 2015, J.P. Morgan Chase & Co. agreed to plead guilty to violation of section 1 of the Sherman Act and agreed the factual bases of the charge including para. 4(h), which states: "In furtherance of the conspiracy, the defendant and its co-conspirators engaged in communications, including nearly daily conversations, some of which were in code, in an exclusive electronic chat room which chat room participants, as well as others in the FX spot market referred to as "The Cartel" or "The Mafia." Said plea agreement is attached hereto as Exhibit B. On May 20, 2015, Citigroup, Inc.; UBS AG, Barclays PLC and Royal Bank of Scotland also entered into Plea Agreements agreeing to plead guilty to the same violation of section 1 of the Sherman Act with respect to fixing and rigging foreign currency exchange rates containing similar terms.

5. The supracompetitive foreign currency exchange rates set, fixed and established by Defendants and paid by plaintiffs and the class are traceable through the application of economic analyses to the computerized bank records of Defendants.

6. The continuing contract, combination, conspiracy, and agreement entered into by Defendants harm competition and have imposed upon Plaintiffs and the class members supra-competitive, exorbitant, and collectively set, fixed and established prices for foreign currency exchange. The agreements, combination, and conspiracy in restraint of trade, are illegal under the Sherman Act, the California Cartwright Act and the California Unfair Competition Law.

## JURISDICTION AND VENUE

7. This is an action under Section 4 of the Clayton Act (15 U.S.C. § 15(a) to recover damages, treble damages and to obtain injunctive and equitable relief under Section 16 of the Clayton Act (15 U.S.C. § 26) against Defendants Bank of America Corporation; Bank of America, N.A.; (hereafter "Bank of America"); JP Morgan Chase & Co; J.P. Morgan Bank, N.A. (hereafter "J.P. Morgan Chase"); HSBC Finance Corporation; HSBC Bank USA, N.A.; HSBC North American Holdings; HSBC Holdings, PLC ("HSBC"), Citigroup, Inc.; UBS AG, Barclays PLC and Royal Bank of Scotland and their co-conspirators due to their violations of Section 1 of the Sherman Act (15 U.S.C. § 1), as well as under the antitrust and other laws of the State of California arising from Defendants' illegal combination, agreement, and conspiracy to fix the price of foreign currency exchange rates and impose anti-competitive Trade Restraints. Jurisdiction of this Court is based on violations of the Sherman Act (15 U.S.C. § 1), the California Cartwright Act (Cal. Bus. & Prof. Code §16700 et seq., 16720 et seq.), the California Unfair Competition Act (Cal. Bus. & Prof. Code § 17200 et seq.), and the California common law of unjust enrichment.

8. This Court has subject matter jurisdiction under Section 16 of the Clayton Antitrust Act (15 U.S.C. § 26), Section 1 of the Sherman Act (15 U.S.C. § 1) and Title 28, United States Code, Sections 1331 and 1337. This Court has subject matter jurisdiction of California law claims asserted in this action under Title 28, United States Code, Sections 1332(d) and 1367, in that the matter in controversy exceeds the sum of $5 million exclusive of interest and costs, and members of the nationwide class are citizens of states different from defendants.

9. Venue is proper in this Judicial District pursuant to Section 12 of the Clayton Act (15 U.S.C. § 22) and Title 28, United States Code, Section 1391 (b), (c), and (d), because a substantial part of the events giving rise to plaintiffs' claims occurred in this District, a substantial portion of the

affected interstate trade and commerce was carried out in this District, and one or more of the Defendants has an agent, maintains an office or does business in this District.

10. Defendants conduct business throughout the United States, including in this jurisdiction, and they have purposefully availed themselves of the laws of the United States, as well as the laws of the State of California. Defendants' products and services are sold in the flow of interstate commerce, and defendants' activities had a direct, substantial and reasonably foreseeable effect on such commerce.

11. Defendants' engaged in conduct in combination and conspiracy to fix foreign currency exchange rates prices and impose Trade Restraints in the State of California that substantially affected interstate commerce throughout the United States.

12. Defendants have availed themselves of the laws of the State of California relating to the production, marketing, and sale of products and services. Defendants produced, promoted, sold, marketed, and/or distributed products and services in California and throughout the 50 United States plus D.C., thereby purposefully profiting from access to plaintiffs and the class in California and in each of the 50 United States plus D.C. As a result of the activities described herein, Defendants:

a. Caused injury and damage to plaintiffs and the class in the Northern District of California and each of the 50 states plus the District of Columbia by overt acts of combination, agreement, and conspiracy to fix the prices of foreign currency exchange rates and enforcement thereof and by adopting and ratifying price-fixing agreements and Trade Restraints in California and enforcing price-fixing agreements and Trade Restraints from California;

b. Engaged in continuing courses of conduct within California and each of the 50 States plus D.C. and/or derived substantial revenue in California from the marketing of products and services from California used in each of the 50 United States plus D.C.; and

c. Committed acts or omissions in California that they knew or should have known would cause damage and that did, in fact, cause such damage, while regularly soliciting business from California in each State nationwide, engaging in continuing courses of conduct, and/or deriving substantial revenue from the marketing of products and services in the 50 United States plus D.C. nationwide.

13. The California-based conspiracy of Defendants has resulted in injury or damage to the members of the nationwide class of Plaintiffs and the class in each of the 50 United States, plus D.C. who paid supracompetitive foreign currency exchange rates inflated by the price-fixed foreign currency exchange rate scheme.

14. Prices of foreign currency exchange rates nationwide and in the 50 United States, plus D.C., were raised to supra-competitive levels by the foreign currency exchange rate price-fixing conspiracy among Defendants. Defendants made price-fixing agreements and engaged in conduct to effect and implement their illegal conspiracy to fix foreign currency exchange rate prices within the Northern District of California. Jurisdiction of this Court is based on the Sherman Act (15 U.S.C. § 1) the Cartwright Act (Cal. Bus. & Prof. Code § 16700 et seq., 16720 et seq.), the California Unfair Competition Act (Cal. Bus. & Prof. Code § 17200 et seq.)  Venue as to each defendant is proper in the Northern District of California. The conspiracy to set, fix and establish Interchange prices and impose Trade Restraints was implemented in California and the Defendants have enforced their price-fixing conspiracy and Trade Restraints in California and Defendants are subject to the jurisdiction of this Court. The illegal conduct allegedly undertaken has resulted in injury and damage to plaintiffs and the class within the Northern District of California, within the State of California and throughout the United States, and the trade described herein is carried on in interstate commerce.

## THE PLAINTIFFS

15. Plaintiff, John Nytl, a California resident, has purchased foreign currency from Defendants and paid foreign currency exchange rates at prices inflated by the foreign currency exchange rate price-fixing conspiracy over many years. Plaintiff and others similarly situated, has been injured in that he has paid more in bank foreign currency exchange rates than he would have paid in the absence of Defendants' violations.

## PLAINTIFF CLASS ACTION ALLEGATIONS

16. Plaintiffs bring this action under Federal Rule of Civil Procedure Rule 23, on behalf of themselves and a class defined as follows:

> All consumers in the United States who paid supracompetitive foreign currency exchange rates to Defendants and their co-conspirators at least since January 1, 2007 to and including class certification, herein.

> Excluded from the class are Defendants, any co-conspirators of Defendants, Defendants' predecessors, successors, parent, subsidiaries, affiliates, officers and directors, federal and state government entities and agencies, cities, counties, and other municipalities, and any judge, justice or judicial officer presiding over this matter and members of their immediate family.

17. The anticompetitive conduct of Defendants herein has imposed, and threatens to impose, a common antitrust injury on Plaintiffs and the Class members. The number of potential Plaintiff Class members is so numerous that joinder is impracticable.

18. Plaintiffs, as representatives of the Plaintiff Class will fairly and adequately protect the interests of the class members and have engaged counsel experienced and competent in litigation of this type. The interests of plaintiffs are coincident with, and not antagonistic to, those of the class members. "Class" as used herein means all purchasers of foreign currency at price-fixed exchange rates resident in the 50 United States plus D.C. since January 1, 2007.

19. The anticompetitive conduct of Defendants has been substantially uniform. Plaintiff's claims are typical of those to be asserted by the Class. Except as to the amount of damages each member of the class has sustained, all other questions of law and fact are common to the class, including, but not limited to, the combination and conspiracy and acts of unfair competition hereinafter alleged, and the effects of such violation.

20. The questions of law and fact common to the members of the class predominate over any questions affecting only individual members of the class. Among the questions of law and fact common to the class are the following:

   a. Whether Defendants illegally combined, agreed and conspired to set, fix and establish foreign currency exchange rates in transactions, which were imposed on Plaintiffs and the Class, thereby extracting supra-competitive foreign currency exchange rates.

   b. All questions of law and fact relating to Defendants are common to all members of the class especially since Defendants have participated in a common combination, agreement and conspiracy to adopt, ratify, implement and enforce the payment of foreign currency exchange rates and enforced implementation of common Trade Restraints and have adopted, ratified, and implemented them.

7
CLASS ACTION COMPLAINT

      c.      Plaintiffs claims against Defendants are typical of the claims against, Defendants by class members. The separate prosecution of individual class members would create risks of inconsistency or varying adjudications respecting the validity, scope, and enforceability of Defendants' foreign currency exchange rate price-fixing and would establish incompatible standards.

21.     Class action treatment is a superior method for the fair and efficient adjudication of the controversy, as joinder is impracticable. Since the damages suffered by many Class Members are small in relation to the expense and burden of individual litigation, it is highly impractical for such Class members to individually attempt to redress the wrongful anticompetitive conduct alleged herein.

## THE DEFENDANTS

22.     Defendant J.P. Morgan Chase & Co. and Defendant J.P. Morgan Chase N.A. (hereafter "J.P. Morgan Chase") Delaware corporations with their principal place of business in New York, New York, whose subsidiary is Chase Bank Defendants J.P. Morgan Chase and their affiliates do business in this judicial district, and do business in California and in interstate commerce. J.P. Morgan Chase and its affiliates have had actual knowledge of, and has knowingly participated in the conspiracy alleged in this Complaint.

23.     Defendant Bank of America NA (hereafter "Bank of America") is a Delaware Corporation that had its principal place of business in San Francisco, California during the development of its corporate practices including the implementation of price-fixed foreign currency exchange rates with the other Defendants. Bank of America later relocated its principal place of business to Charlotte, North Carolina, and subsequently acquired Countrywide Bank and MBNA Bank, which significantly increased its capacity and power, and it is doing business and has done business in this judicial district, in California since it was founded in San Francisco, California by A. P. Giannini, and does business in interstate commerce. It has had actual knowledge of, and has knowingly participated in the conspiracy alleged in this Complaint.

24.     Defendant HSBC Finance Corporation is a Delaware corporation with its principal place of business in Prospect Heights, Illinois. It is a subsidiary of Defendant HSBC Bank USA, NA, a Delaware corporation with its principal place of business in Wilmington, Delaware, which is a

subsidiary of Defendant HSBC North America Holdings, Inc. which is a subsidiary of defendant HSBC Holdings, PLC, a United Kingdom corporation with its principal place of business in London, England. Each of these entities are collectively referred to as "HSBC." It has had actual knowledge of, and has knowingly participated in the conspiracy alleged in this Complaint.

25. Citigroup, Inc. is a Delaware Corporation whose principal place of business is New York, New York. Citigroup and its affiliates (hereafter "Citi") do business in this judicial district and in California and in interstate commerce. It has had actual knowledge of, and has knowingly participated in the conspiracy alleged in this Complaint.

26. Barclays PLC is a United Kingdom corporation with principal offices in London, England and does business in this judicial district and in California and in interstate commerce. It has had actual knowledge of, and has knowingly participated in the conspiracy alleged in this Complaint.

27. Royal Bank of Scotland is a United Kingdom corporation doing business in this judicial district and California and does business in interstate commerce. It has had actual knowledge of, and has knowingly participated in the conspiracy alleged in this Complaint.

28. UBS, AG is a Swiss corporation doing business in this judicial district and California and does business in interstate commerce. It has had actual knowledge of, and has knowingly participated in the conspiracy alleged in this Complaint.

29. Various persons, firms, corporations, organizations, and other business entities, some unknown and others known, have participated as co-conspirators in the violations alleged and have performed acts in furtherance of the conspiracies. Plaintiffs may seek leave to amend this complaint to add the co-conspirators, known and unknown as Defendants.

**THE HORIZONTAL PER SE CONSPIRACY, COMBINATION AND AGREEMENT TO FIX AND RIG FOREIGN CURRENCY EXCHANGE RATES IS DOCUMENTED IN PLEA AGREEMENTS ENTERED INTO BETWEEN THE UNITED STATES DEPARTMENT OF JUSTICE AND DEFENDANTS**

30. On May 20, 2015, the United States Department of Justice issued its press release stating that Defendants had entered into agreements to plead guilty to price-fixing foreign currency

exchange rates since 2007 as follows:

## "FIVE MAJOR BANKS AGREE TO PARENT-LEVEL GUILTY PLEAS

**U.S. Department of Justice**  •  Office of Public Affairs
**Justice** May 20, 2015             (202) 514-2007/ (202) 514-1888

Five major banks—Citicorp, JPMorgan Chase & Co., Barclays PLC, The Royal Bank of Scotland plc and UBS AG—have agreed to plead guilty to felony charges. Citicorp, JPMorgan Chase & Co., Barclays PLC, and The Royal Bank of Scotland plc have agreed to plead guilty to conspiring to manipulate the price of U.S. dollars and euros exchanged in the foreign currency exchange (FX) spot market and the banks have agreed to pay criminal fines totaling more than $2.5 billion. A fifth bank, UBS AG, has agreed to plead guilty to manipulating the London Interbank Offered Rate (LIBOR) and other benchmark interest rates and pay a $203 million criminal penalty, after breaching its December 2012 non-prosecution agreement resolving the LIBOR investigation.

Attorney General Loretta E. Lynch, Assistant Attorney General Bill Baer of the Justice Department's Antitrust Division, Assistant Attorney General Leslie R. Caldwell of the Justice Department's Criminal Division, Assistant Director in Charge Andrew G. McCabe of the FBI's Washington Field Office and Director Aitan Goelman of the Commodity Futures Trading Commission's Division made the announcement.

"Today's historic resolutions are the latest in our ongoing efforts to investigate and prosecute financial crimes, and they serve as a stark reminder that this Department of Justice intends to vigorously prosecute all those who tilt the economic system in their favor; who subvert our marketplaces; and who enrich themselves at the expense of American consumers," said Attorney General Lynch. "The penalty these banks will now pay is fitting considering the long-running and egregious nature of their anticompetitive conduct. It is commensurate with the pervasive harm done. And it should deter competitors in the future from chasing profits without regard to fairness, to the law, or to the public welfare."

"The charged conspiracy fixed the U.S. dollar—euro exchange rate, affecting currencies that are at the heart of international commerce and undermining the integrity and the competitiveness of foreign currency exchange markets which account for hundreds of billions of dollars worth of transactions every day," said Assistant Attorney General Baer. "The seriousness of the crime warrants the parent-level guilty pleas by Citicorp, Barclays, JPMorgan and RBS."

"The five parent-level guilty pleas that the department is announcing today communicate loud and clear that we will hold financial institutions accountable for criminal misconduct," said Assistant Attorney General Caldwell. "And we will enforce the agreements that we enter into with corporations. If appropriate and proportional to the misconduct and the company's track record, we will tear up an NPA or a DPA and prosecute the offending company."

"These resolutions make clear that the U.S. Government will not tolerate criminal behavior in any sector of the financial markets," said Assistant Director in Charge McCabe. "This investigation represents another step in the FBI's ongoing efforts to find and stop those responsible for complex financial schemes for their own personal benefit. I commend the special agents, forensic accountants, and analysts, as well as the prosecutors for the significant time and resources they committed to investigating this case."

According to plea agreements to be filed in the District of Connecticut, between December 2007 and January 2013, euro-dollar traders at Citicorp, JPMorgan, Barclays and RBS—self-described members of "The Cartel"—used an exclusive electronic chat room and coded language to manipulate benchmark exchange rates. Those rates are set through, among other ways, two major daily "fixes," the 1:15 p.m. European Central Bank fix and the 4:00 p.m. World Markets/Reuters fix. Third parties collect trading data at these times to calculate and publish a daily "fix rate," which in turn is used to price orders for many large customers. "The Cartel" traders coordinated their trading of U.S. dollars and euros to manipulate the benchmark rates set at the 1:15 p.m. and 4:00 p.m. fixes in an effort to increase their profits.

> As detailed in the plea agreements, these traders also used their exclusive electronic chats to manipulate the euro-dollar exchange rate in other ways. Members of "The Cartel" manipulated the euro-dollar exchange rate by agreeing to withhold bids or offers for euros or dollars to avoid moving the exchange rate in a direction adverse to open positions held by co-conspirators. By agreeing not to buy or sell at certain times, the traders protected each other's trading positions by withholding supply of or demand for currency and suppressing competition in the FX market.
>
> Citicorp, Barclays, JPMorgan and RBS each have agreed to plead guilty to a one-count felony charge of conspiring to fix prices and rig bids for U.S. dollars and euros exchanged in the FX spot market in the United States and elsewhere. Each bank has agreed to pay a criminal fine proportional to its involvement in the conspiracy:
>
> - Citicorp, which was involved from as early as December 2007 until at least January 2013, has agreed to pay a fine of $925 million;
>
> - Barclays, which was involved from as early as December 2007 until July 2011, and then from December 2011 until August 2012, has agreed to pay a fine of $650 million;
>
> - JPMorgan, which was involved from at least as early as July 2010 until January 2013, has agreed to pay a fine of $550 million; and
>
> - RBS, which was involved from at least as early as December 2007 until at least April 2010, has agreed to pay a fine of $395 million.
>
> Barclays has further agreed that its FX trading and sales practices and its FX collusive conduct constitute federal crimes that violated a principal term of its June 2012 non-prosecution agreement resolving the department's investigation of the manipulation of LIBOR and other benchmark interests rates. Barclays has agreed to pay an additional $60 million criminal penalty based on its violation of the non-prosecution agreement.
>
> In addition, according to court documents to be filed, the Justice Department has determined that UBS's deceptive currency trading and sales practices in conducting certain FX market transactions, as well as its collusive conduct in certain FX markets, violated its December 2012 non-prosecution agreement resolving the LIBOR investigation. The department has declared UBS in breach of the agreement, and UBS has agreed to plead guilty to a one-count felony charge of wire fraud in connection with a scheme to manipulate LIBOR and other benchmark interest rates. UBS has also agreed to pay a criminal penalty of $203 million." As set forth in the DOJ Press Release attached hereto as Exhibit A.

34. Since at least 2007, Defendants have entered into illegal price-fixing agreements adopting, ratifying, agreeing to and implementing rigged foreign currency exchange rates among other agreements in a combination and conspiracy to set, fix, establish, adopt, ratify, implement and enforce uniform, standard rigged foreign currency exchange rates.

35. No Defendant or co-conspirator has made any affirmative withdrawal from the conspiracy, combination and agreement to fix and rig the prices of foreign currency exchange rates.

36. The Department of Justice ("DOJ") in cooperation with the Office of the Controller of the Currency ("OCC"), Commodity Futures Trading Commission ("CFTC"), and Federal Reserve Bank ("Fed") has investigated Defendants' bid rigging and price fixing of foreign currency

exchange rates, have found violations and obtained Agreements to Plead Guilty by Defendants and imposed fines on Defendants for price-fixing and bid rigging of foreign currency exchange rates 2007 to the present as set forth in Exhibit A attached hereto, the DOJ's Press Release dated May 20, 2015; Exhibit B attached hereto , J.P. Morgan Chase & Co.'s Plea Agreement with the U.S. Department of Justice and its 8-K filed with the SEC; Exhibit C attached hereto, the CFTC's Press Release relative to the violations and fines imposed on Defendants; Exhibit D attached hereto, the OCC's Press Release relative to the violations and the fines imposed on Defendants; Exhibit E hereto, the Fed's Press Release relative to the violations and the fines imposed on Defendants; Exhibit F attached hereto, a Bloomberg article on relative to the violations, plea agreements and fines imposed on Defendants; Exhibit G, a New York Times article relative to the violations and fines imposed on Defendants. Exhibits A-G are attached hereto and incorporated by reference herein.

In corroboration of this, Defendant J.P. Morgan Chase & Co. filed a form 8-K with the SEC on May 14, 2015, attached hereto as Exhibit B, which states as follows:

> **Item 8.01 Other Events.**
>
> JP Morgan Chase & Co. (the "Firm") previously reported that it was in advanced discussions with the U.S. Department of Justice ("DOJ") and the Board of Governors of the Federal Reserve System regarding resolution of their respective investigations of the Firm's foreign exchange sales and trading activities and controls related to those activities. Those discussions, while not completed, are nearing conclusion, and the Firm understands that any resolution acceptable to DOJ would require that the Firm plead guilty to an antitrust charge.

J.P. Morgan Chase & Co.'s 8-K filed with the SEC is attached hereto as Exhibit B and incorporated herein by reference.

37. In furtherance of the conspiracy, Defendants have engaged in the conspiracy to fix foreign currency exchange rates and engaged in various anticompetitive acts, including Trade Restraints within the State of California that are related to plaintiffs' injuries. *AT&T Mobility LLC v. AU Optronics Corp.*, 707 F.3d 1106 (9th Cir. 2013); *United States v. Visa U.S.A., Inc., et al.*, 163 F.Supp.2d 322 at pp. 384-387 *aff'd* 344 F.3d 229 at 240 (2nd Cir. 2003); *cert. den'd.* 160 L.Ed.2d 14.

///

By engaging in their combination, agreement and conspiracy to fix foreign currency exchange rates an committing other anticompetitive acts in California, Defendants engaged in a California-based horizontal scheme to fix and obtain inflated foreign currency exchange rates, exclude competition and impose Trade Restraints in California, Defendants subjected themselves to California law, including the California Cartwright Act and the California Unfair Competition Law.

## PURPOSE AND EFFECT

38. The purpose of the agreement among and between Defendants is to extract inflated foreign currency exchange rates from Plaintiffs and the class. Defendants know and understand that the prices charged for foreign currency exchange rates, in the United States, including California, are excessive and they would not be able to charge such high non-competitive fees were it not for the illegal agreement, combination and conspiracy between and among themselves to set, fix and establish and maintain the higher foreign currency exchange rate prices charged.

39. The combination, agreement and conspiracy is aimed at restraining competition, from competing with the price-fixed foreign currency exchange rate, and in fact harms competition by:

    a. Causing increased prices for foreign currency exchange rates;

    b. Denying consumers information about the relative costs of Defendants' foreign currency exchange rates compared to other exchange rates that would cause more consumers to choose lower cost payment methods;

    c. Harming the competitive process and disrupting the proper functioning of the price-setting mechanism of a free market;

    d. Stifling innovation in foreign currency exchange rate offerings that would emerge if competitors were forced to compete for business;

    e. Restraining banks from competing and offering lower prices;

    f. Insulating each Defendant from competition from competitors

    g. Causing increased prices for foreign currency exchange rates paid by Plaintiffs and the class.

///

## FRAUDULENT CONCEALMENT

40. Until shortly before the filing of this complaint, Plaintiffs and members of the Plaintiff Class had no knowledge that Defendants were violating the antitrust laws as alleged herein. Plaintiffs and the members of the class could not have discovered any other violations at any time prior to this date by the exercise of due diligence because of fraudulent and active concealment of the conspiracy by Defendant.

41. The affirmative actions of Defendants hereinbefore alleged were wrongfully concealed and carried out in a manner which precluded detection. Plaintiffs had no knowledge of the antitrust violations herein alleged or any facts that might have led to their discovery. Plaintiffs could not have uncovered the violations alleged herein at an earlier date inasmuch as the means for discovering their causes of action were not reasonably ascertainable due to the fraudulent concealment of activities through various means and methods designed to avoid detection. Defendants secretly conducted activities in furtherance of the conspiracy and attempted to confine information concerning the conspiracy to key officials and engaged in conduct giving rise to an estoppel to assert the statute of limitations.

## DAMAGES

42. During the period of time covered by the antitrust violations by Defendants, Plaintiffs and each member of the class paid supracompetitive price-fixed foreign currency exchange rates to Defendants.

43. By reason of the antitrust violations herein alleged, Plaintiffs and each member of the Plaintiff Class paid more than they would have paid in the absence of such antitrust violations. As a result, Plaintiff and each member of the class have been injured and damaged in an amount presently undetermined.

## VIOLATIONS ALLEGED

## FIRST CLAIM FOR RELIEF

### (Price-Fixing, Per Se Violation of Section 1 of the Sherman Act)

44. Plaintiffs incorporate and re-allege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

45. Beginning at a time currently unknown to plaintiffs, but at least as early as January 1, 2007, and continuing through class certification, the exact dates being unknown to plaintiffs, Defendants entered into a continuing combination, agreement, and conspiracy in restraint of trade artificially to set, fix, rig and establish, raise, stabilize, and peg prices for foreign currency exchange rates in the United States, in violation of Section 1 of the Sherman Act (15 U.S.C. § 1.)

46. By engaging in their combination, agreement and conspiracy to fix foreign currency exchange rates an committing other anticompetitive acts in California, Defendants engaged in a California-based horizontal scheme to fix and obtain inflated foreign currency exchange rates, exclude competition and impose Trade Restraints in California, Defendants subjected themselves to California law, including the California Cartwright Act and the California Unfair Competition Law.

47. In formulating and carrying out the alleged combination, agreement, and conspiracy, Defendants did those things that they combined, agreed and conspired to do, including but not limited to the acts, practices, and course of conduct set forth above, and the following, among others:

    a. Setting, fixing and establishing, raising, stabilizing, rigging and pegging the prices of foreign currency exchange rates;

    b. Imposing Trade Restraints to Protect their Combination, Agreement and Conspiracy to fix the prices of foreign currency exchange rates;

    c. Allocating market share among themselves and collusively excluding competition.

48. The combination and conspiracy alleged herein has had the following effects, among others:

    a. Prices for foreign currency exchange rates have been set, fixed and established, raised, rigged, maintained and stabilized at artificially high, non-competitive levels throughout the 50 United States by Defendants;

    b. Price competition in the 50 United States plus D.C. has been restrained, suppressed, and/or eliminated with respect to foreign currency exchange rates;

    c. Prices for foreign currency exchange rates have been set, fixed and established, raised, rigged, maintained and stabilized at artificially high, non-competitive levels

1  throughout the United States by Defendants; and

2          d.    Plaintiffs and the class have been deprived of the benefits of free and open competition by Defendants.

3  49.    Plaintiffs and other Class members have been injured and will continue to be injured in their businesses and property by paying higher foreign currency exchange rates than they would have paid and will pay in the absence of the combination and conspiracy.

4  50.    Plaintiffs and the Class are entitled to damages, treble damages, attorneys' fees and costs, and an injunction against defendants, preventing and restraining the violations alleged herein.

## SECOND CLAIM FOR RELIEF

### (California Cartwright Act)

### (Trust To Set, Fix and Establish Prices And Restrain Trade)

51.    Plaintiffs incorporate and re-allege all paragraphs in this Complaint, as though fully set forth below.

52.    Plaintiffs allege this Claim on behalf of themselves and the class of all others similarly situated.

53.    Beginning at least as early as 2007 and continuing up to and including the date of the filing of this Complaint, Defendants continuously combined, conspired, and agreed among themselves and others, and are members of, acted with or in pursuance of, or aided or assisted in carrying out a combination of acts with the purpose and effect to create or carry out restriction of commerce and restraints of trade by agreeing to fix high non-competitive, supracompetitive prices for foreign currency exchange rates, imposed on Plaintiffs and the Class in the 50 States of the United States plus D.C. and have collectively adopted and enforced Trade Restraints which would have the effect of lower, competitive priced foreign currency exchange rates to protect the supracompetitive prices of foreign currency exchange rates set, fixed and established by the foreign currency exchange rate price-fixing conspiracy among Defendants.

54.    Defendants, acting by and through their Co-conspirators, engaged in a California-based horizontal scheme to fix and obtain foreign currency exchange rates paid by Plaintiffs and the Class to exclude competition from offering competitive foreign currency exchange rates and impose

Trade Restraints in California to protect the conspiracy to fix foreign currency exchange rates, subjected themselves to California law, including the California Cartwright Act and the California Unfair Competition Law.

55. In furtherance of the aforesaid combination and conspiracy, Defendants have taken action in concert to enforce the maintenance of higher non-competitive prices of foreign currency exchange rates in the United States, by, inter alia, agreeing to maintain high artificial prices of foreign currency exchange rates in the United States and by taking collective action to stop potential erosion of the high non-competitive fees by continuing to impose and enforce Trade Restraints to prevent competition.

56. Said combination and conspiracy consisted of a continuing agreement, understanding, and concert of action among Defendants to maintain the high supra-competitive prices of foreign currency exchange rates imposed on Plaintiffs and the Class.

57. Defendants participated in overt acts in furtherance of the conspiracy alleged and have participated in conspiratorial activities and attended conspiratorial meetings on a frequent and regular basis. These anti-competitive agreements were forged and implemented by personal meetings and communications among and between Defendants.

58. The specific conduct of Defendants as alleged in this Complaint violates Section 16700 et seq., 16720 et seq. of the California Business and Professions Code.

59. As a result Plaintiffs and all other Class members similarly situated, in the 50 states of the United States have been injured by being forced to pay higher foreign currency exchange rates than they would have paid in the absence of the price-fixing conspiracy alleged herein.

60. Plaintiffs and the Class are entitled to damages, treble damages, attorneys' fees and costs and an injunction against defendants, preventing and restraining the violations alleged herein.

### THIRD CLAIM FOR RELIEF

#### (California Unfair Competition Act)

61. Plaintiff re-alleges each and every one of the allegations in paras. 1-51 above.

62. Said conduct of Defendants constitute acts of unfair competition and violations of law and fraudulent conduct under the California Unfair Competition Act.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands:

A. That the Court determines that this action may be maintained as a class action pursuant to the Federal Rules of Civil Procedure Rule 23;

B. With respect to the First, Second Claims:

   a. that the alleged combination and conspiracy among Defendants be adjudged and decreed to be an illegal combination and trust, and an unreasonable restraint of trade in violation of the Sherman Act sections 1 and 2, and California Business & Professions Code § 16700 et seq., 16720 et seq., §16727 et seq.;

   b. that judgment be entered against Defendants and in favor of Plaintiffs and each member of the class they represent for injunctive relief;

   c. that judgment be entered against Defendants and in favor of Plaintiffs and each member of the class they represent for threefold the damages determined to have been sustained by them;

   d. that Defendants, successors, assignees, subsidiaries and transferees, and their respective officers, directors, agents and employees, and all other persons acting or claiming to act on behalf thereof or in concert therewith, be perpetually enjoined and restrained from, in any manner, directly or indirectly, continuing, maintaining or renewing the aforesaid combination, conspiracy, agreement, understanding or concert of action, and adopting or following any practice, plan, program or design having a similar purpose or effect in restraining competition;

   e. that Plaintiffs be awarded reasonable attorneys' fees and costs.

D. That Plaintiffs and members of the class be allowed to recover pre-judgment and Post-judgment interest on the above sums at the highest rate allowed by law; and

E. That the Court order such other and further relief as may appear necessary and appropriate.

///

///

///

**JURY DEMAND**

Plaintiffs respectfully demand a trial by jury of all issues so triable.

Respectfully Submitted,

**ALIOTO LAW FIRM**

Dated: May 21, 2015      By: /s/ *Joseph M. Alioto*
　　　　　　　　　　　　　　　JOSEPH M. ALIOTO
　　　　　　　　　　　　　　　Attorneys for Plaintiffs


**LAW OFFICES OF LINGEL H. WINTERS**

Dated: May 21, 2015      By: /s/ *Lingel H. Winters*
　　　　　　　　　　　　　　　LINGEL H. WINTERS
　　　　　　　　　　　　　　　Attorneys for Plaintiffs