1  GIBSON, DUNN & CRUTCHER LLP
   JOEL S. SANDERS, SBN 107234
2  JSanders@gibsondunn.com
   555 Mission Street, Suite 3000
3  San Francisco, California 94105-2933
   Telephone: (415) 393-8200
4  Facsimile: (415) 393-8306
   *Attorneys for Defendant* UBS AG
5  [ADDITIONAL MOVING DEFENDANTS
   AND COUNSEL LISTED ON SIGNATURE PAGE]
6

7

8

9                 UNITED STATES DISTRICT COURT

10              NORTHERN DISTRICT OF CALIFORNIA

11                  SAN FRANCISCO DIVISION

12

13  JOHN NYPL, et al.,                 Case No. 3:15-cv-02290-VC

14              Plaintiffs,            **DEFENDANTS' NOTICE OF MOTION AND
                                       MOTION TO TRANSFER UNDER
15         v.                          28 U.S.C. § 1404 AND MEMORANDUM
                                       IN SUPPORT**
16  JPMORGAN CHASE & CO., et al.,
                                       ***Declaration of Joel S. Sanders and Proposed
17              Defendants.            Order Filed Concurrently***

18                                     **Hearing:**
                                       Date:        October 22, 2015
19                                     Time:        10:00 a.m.

20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

**DEFENDANTS' MOTION TO TRANSFER AND MEMORANDUM IN SUPPORT**

# TABLE OF CONTENTS

Page

NOTICE OF MOTION TO TRANSFER UNDER 28 U.S.C. § 1404.................................... v

STATEMENT OF ISSUE TO BE DECIDED PER CIVIL L.R. 7-4(A)(3) ........................ v

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION

I.      INTRODUCTION .......................................................................................... 1

II.     SUMMARY OF ALLEGED FACTS AND PROCEDURAL HISTORY ............................. 2

III.    ARGUMENT ................................................................................................. 5

        Section 1404 Warrants Transfer Because The Balance Of Private And Public Interests
        Decisively Favors The S.D.N.Y. As The More Convenient Forum. ........................... 5

        1.      Consolidation With The Other Actions Pending Is Feasible ......................... 6

        2.      Party Convenience Favors Transfer .................................................... 9

        3.      Witness Convenience Favors Transfer.................................................. 10

        4.      The S.D.N.Y. Already Has Examined
                Applicable Law And Alleged Facts ..................................................... 11

        5.      Plaintiffs Allege No Meaningful Local Interest in the Controversy ............... 11

IV.     CONCLUSION.............................................................................................. 12

i

1

# TABLE OF AUTHORITIES

2

Page(s)

3

## Cases

4

*A.J. Indus., Inc. v. U.S. Dist. Court for Cent. Dist. of Cal.*,
    503 F.2d 384 (9th Cir. 1974)...................................................................................... 6

5

*Arunachalam v. Pazuniak*,
6    No. 14-cv-5051, 2015 WL 1249877 (N.D. Cal. Mar. 17, 2015)...................................... 5

7
*Atl. Marine Constr. Co. v. U.S. Dist. Ct., W. Dist. Tex.*,
    134 S. Ct. 568 (2013) ............................................................................................ 5, 12
8

*Bank Brussels Lambert, SA v. Intermetals Corp.*,
9    779 F. Supp. 741 (S.D.N.Y. 1991) ................................................................................ 2

10
*Comcast Corp. v. Behrend*,
    133 S. Ct. 1426 (2013) ................................................................................................ 7
11

*Ctr. for Food Safety v. Vilsack*,
12    No. 11-cv-00831, 2011 WL 996343 (N.D. Cal. Mar. 17, 2011)...................................... 8

13
*Cung Le v. Zuffa, LLC*,
    No. 5:14-cv-05484, — F. Supp. 3d —, 2015 WL 3488769 (N.D. Cal. June 2, 2015) ................... 9
14

*Devlin v. Transp. Commc'ns Int'l Union*,
15    175 F.3d 121 (2d Cir. 1999)........................................................................................ 6

16
*Ferens v. John Deere Co.*,
    494 U.S. 516 (1990).................................................................................................... 5
17

*Flexible Funding, LLC v. Iron Mountain Info. Mgmt.*,
18    No. 05-cv-2082, 2005 WL 2431241 (N.D. Cal. Sept. 30, 2005) .................................... 9

19
*Fort Knox Music, Inc. v. Baptiste*,
    257 F.3d 108 (2d Cir. 2001)...................................................................................... 12
20

*Foster v. Nationwide Mut. Ins. Co.*,
21    No. 07-cv-04928, 2007 WL 4410408 (N.D. Cal. Dec. 14, 2007).................................... 9

22
*Gemini Capital Grp., Inc. v. Yap Fishing Corp.*,
    150 F.3d 1088 (9th Cir. 1998)...................................................................................... 9
23

*Goldstein v. Puda Coal, Inc.*,
24    827 F. Supp. 2d 348 (S.D.N.Y. 2011).......................................................................... 7

25
*Hawkins v. Gerber Prods. Co.*,
    924 F. Supp. 2d 1208 (S.D. Cal. 2013)........................................................................ 6
26

*Hypower, Inc. v. SunLink Corp.*,
27    No. 14-cv-00740, 2014 WL 1618379 (N.D. Cal. Apr. 21, 2014).................................... 6

28
*In re Adams Apple, Inc.*,
    829 F.2d 1484 (9th Cir. 1987)...................................................................................... 6

Gibson, Dunn &
Crutcher LLP

DEFENDANTS' MOTION TO TRANSFER AND MEMORANDUM IN SUPPORT

# TABLE OF AUTHORITIES
(continued)

Page(s)

*In re Facebook, Inc., IPO Sec. & Deriv. Litig.*,
   288 F.R.D. 26 (S.D.N.Y. 2012) ................................................................................. 7

*In re Foreign Exch. Benchmark Rates Antitrust Litig.*,
   74 F. Supp. 3d 581 (S.D.N.Y. 2015) ............................................................... 2, 3, 11

*In re Foreign Exch. Benchmark Rates Antitrust Litig.*,
   S.D.N.Y. No. 13-cv-7789 .................................................................................... 1, 4

*In re Funeral Consumers Antitrust Litig.*,
   No. 05-cv-01804, 2005 WL 2334362 (N.D. Cal. Sept. 23, 2005) ........................... 9

*Johansson v. Cent. Garden & Pet Co.*,
   No. 10-cv-03771, 2010 WL 4977725  (N.D. Cal. Dec. 2, 2010) ..................... 6, 9, 10

*King v. Sam Holdings, LLC*,
   No. 10-cv-04706, 2011 WL 4948603 (N.D. Cal. Oct. 18, 2011) .......................... 10

*Koehler v. Pepperidge Farm, Inc.*,
   No. 13-cv-02644, 2013 WL 4806895 (N.D. Cal. Sept. 9, 2013) ............................ 8

*La Casa Real Estate & Inv., LLC v. KB Home of S.C., LLC*,
   No. 1:09-cv-895, 2010 WL 2649867 (M.D.N.C. June 30, 2010) .......................... 12

*Lou v. Belzberg*,
   834 F.2d 730 (9th Cir. 1987) ................................................................................. 10

*Madani v. Shell Oil Co.*,
   No. 07-cv-04296, 2008 WL 268986 (N.D. Cal. Jan. 30, 2008) ........................ 9, 11

*McGraw-Hill Cos. v. Jones*,
   No. 12-cv-7085, 2014 WL 988607 (S.D.N.Y. Mar. 12, 2014) ............................. 12

*Meru Networks, Inc. v. Extricom Ltd.*,
   No. 10-cv-02021, 2010 WL 3464315 (N.D. Cal. Aug. 31, 2010) .......................... 6

*Mohanty v. BigBand Networks, Inc.*,
   No. 07-cv-5101, 2008 WL 426250 (N.D. Cal. Feb. 14, 2008) ............................... 7

*Piper Aircraft Co. v. Reyno*,
   454 U.S. 235 (1981) ................................................................................................ 5

*SEC v. Roberts*,
   No. 07-cv-407, 2007 WL 2007504 (D.D.C. July 10, 2007) ................................. 10

*Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*,
   549 U.S. 422 (2007) .............................................................................................. 12

*Taylor v. Shinseki*,
   13 F. Supp. 3d 81 (D.D.C. 2014) .......................................................................... 12

DEFENDANTS' MOTION TO TRANSFER AND MEMORANDUM IN SUPPORT

# TABLE OF AUTHORITIES
(continued)

Page(s)

*Van Dusen v. Barrack*,
376 U.S. 612 (1964) ................................................................................................. 5

*Ventress v. Japan Airlines*,
486 F.3d 1111 (9th Cir. 2007) ................................................................................ 11

*Vu v. Ortho-McNeil Pharm., Inc.*,
602 F. Supp. 2d 1151 (N.D. Cal. 2009) ................................................................ 10

*W. Digital Techs., Inc. v. Bd. of Regents*,
No. 10-cv-3595, 2011 WL 97785 (N.D. Cal. Jan. 12, 2011) .................... 8, 10, 11, 12

*Wal-Mart Stores, Inc. v. Dukes*,
131 S. Ct. 2541 (2011) .............................................................................................. 7

*Williams v. Bowman*,
157 F. Supp. 2d 1103 (N.D. Cal. 2001) .................................................................. 5

*Wireless Consumers Alliance, Inc. v. T-Mobile USA, Inc.*,
No. 03-cv-3711, 2003 WL 22387598 (N.D. Cal. Oct. 14, 2003) ............................ 8

**Statutes**

15 U.S.C. § 1 ................................................................................................................ 2, 8

28 U.S.C. § 1404(a) .................................................................................................... 1, 5

**Rules**

Fed. R. Civ. P. 1 ............................................................................................................... 2

Fed. R. Civ. P. 23 ............................................................................................................. 7

Fed. R. Civ. P. 42(a) ........................................................................................................ 6

**Other Authorities**

*Forex Settlements Hit $2B As Goldman, 4 Others Reach Deals*, Law360, Aug. 13, 2015, ............... 4

Gibson, Dunn &
Crutcher LLP

iv

**DEFENDANTS' MOTION TO TRANSFER AND MEMORANDUM IN SUPPORT**

1

## NOTICE OF MOTION TO TRANSFER UNDER 28 U.S.C. § 1404

2

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

3

PLEASE TAKE NOTICE that on October 22, 2015, at 10:00 a.m., or as soon thereafter as

4

this matter may be heard, in Courtroom 4, on the 17th Floor of the above-captioned court, located at

5

450 Golden Gate Avenue, San Francisco, CA 94102, before the Honorable Vince Chhabria, the

6

undersigned defendants ("Defendants") will, and hereby do, move this Court for an order under 28

7

U.S.C. § 1404, transferring this action by Plaintiffs John Nypl et al. to the United States District

8

Court for the Southern District of New York ("S.D.N.Y."), for possible consolidation with *In re*

9

*Foreign Exchange Benchmark Rates Antitrust Litigation*, S.D.N.Y. No. 13-cv-7789, before the

10

Honorable Lorna G. Schofield.  This case should be transferred to the S.D.N.Y. to properly advance

11

party and witness convenience and preserve the resources of the litigants and courts, in light of the

12

substantial similarity between Plaintiffs' claims here and those entailed in the 18 previously-filed and

13

now-consolidated suits long pending in the S.D.N.Y. concerning alleged antitrust violations by

14

Defendants or their affiliates in the foreign-exchange markets.

15

## STATEMENT OF ISSUE TO BE DECIDED PER CIVIL L.R. 7-4(A)(3)

16

Whether transfer of this action to the S.D.N.Y. for possible consolidation with 18 similar

17

actions pending there is warranted in the interest of justice and convenience of parties and witnesses

18

under 28 U.S.C. § 1404, because, among other things, this District is not connected to the underlying

19

dispute; the S.D.N.Y. has already invested considerable energy over nearly two years in assessing the

20

factual and legal contentions and in managing the actions; settlements (encompassing Plaintiffs'

21

claims here) with all Defendants sued here or their affiliates have already been announced; and the

22

transfer would prevent squandering judicial resources and avoid duplication of the parties' efforts.

23

24

25

26

27

28

Gibson, Dunn & Crutcher LLP

v

1

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION**

2

## I.   INTRODUCTION

3
4
5
6
7
8
9
10
11
12

This is the 20th pending class action that has been filed against Defendants or their affiliates following the disclosure in 2013 of government investigations of the foreign exchange ("FX") markets, and the 19th to allege violations of the federal antitrust laws.  It is, however, the only one not filed in the Southern District of New York.  The S.D.N.Y. actions alleged price fixing and other violations by a dozen banks, including Defendants here or their affiliates, and purported to assert claims on behalf of classes including virtually everyone who dealt with a defendant bank in the United States and who may have been injured in FX and related transactions.  Plaintiffs in the S.D.N.Y. filed the first of their cases nearly two years ago, and class settlements in principle totaling over $2 billion have recently been announced with nine defendant groups, including all those who have been sued here.

13
14
15
16
17

As made plain in Plaintiff John Nypl's First Amended Complaint ("FAC") (Dkt. 1), this action is a narrower version of the actions pending in the S.D.N.Y.  Under the balance-of-interest standard for discretionary transfer of cases within the federal courts system for party convenience and judicial economy, this action is exceptionally well suited for transfer to the S.D.N.Y. for possible consolidated treatment with the 18 now-consolidated actions pending there.

18
19
20
21
22
23
24
25
26
27
28

Transfer is strongly favored under 28 U.S.C. § 1404(a) and the rule favoring the forum in which prior related actions are filed.  In light of the substantial overlap between Plaintiffs' claims and those at issue in the putative class actions consolidated in the S.D.N.Y., in *In re Foreign Exchange Benchmark Rates Antitrust Litigation* ("*In re FX*"), No. 13-cv-7789—actions which are not only pending but that are the subject of settlements announced by the plaintiffs before the S.D.N.Y.— transfer of this case to S.D.N.Y. would on balance serve "the convenience of parties and witnesses" and otherwise promote "the interest of justice" under Section 1404(a).  Indeed, the balance tips sharply in favor of such a transfer.  New York is the largest FX trading center in the United States, and it has obvious connections to this controversy.  By contrast, this District is not connected to the controversy—the underlying events did not occur here.  And this case is an outlier—it is the only one of the many putative class actions to date alleging antitrust violations on behalf of nationwide classes

in the FX markets that was not commenced in the S.D.N.Y.  Judge Schofield has *already* invested

considerable energy in examining these allegations, and consolidation of the instant action with the

18 previously-consolidated actions upon transfer is not only feasible, but also would avoid

duplicating in this District potentially contentious and costly proceedings that have *already* taken

place in the S.D.N.Y.  In all, transfer under Section 1404(a) would be the most orderly way to secure

a "just, speedy, and inexpensive" disposition of this case.  Fed. R. Civ. P. 1.

## II.   SUMMARY OF ALLEGED FACTS AND PROCEDURAL HISTORY

**1.  *In re FX* in S.D.N.Y.**  The first of the *In re FX* actions commenced in the S.D.N.Y. on

November 1, 2013.  Sanders Decl., Ex. A [*In re FX*, Dkt. 1].  Judge Schofield consolidated that case

with 12 others in February 2014, Sanders Decl., Ex. B [*In re FX*, Dkt. 96 (consolidation order)], all of

which alleged that defendants and certain affiliates conspired in violation of the Sherman Act, 15

U.S.C. § 1, to manipulate benchmark currency exchange rates (in particular, the WM/Reuters Closing

Spot Rates calculated at 4:00 p.m. London time).

The court denied the defendants' motion to dismiss the consolidated amended class action

complaint in *In re FX* in January 2015.  74 F. Supp. 3d 581 (S.D.N.Y. 2015).  The complaint alleged

that the consolidated plaintiffs "engaged in FX spot and outright forward transactions with one or

more Defendants between January 1, 2003, and March 31, 2014."  *Id.* at 586.[1]  The plaintiffs' "core

allegation," the court observed, "is that 'Defendants executed concerted trading strategies designed to

manipulate, and which actually did manipulate'" the WM/R 4pm Fix—the most widely used of

several currency exchange rates published during the trading day—"allowing Defendants 'to reap

supra-competitive profits at the expense of Plaintiffs and the Class.'"  *Id.* at 587.  The complaint

further alleged that "'Defendants' top-level traders used electronic communications to meet and

conspire for over a decade' using a variety of electronic fora, including chat rooms, instant messages

and email."  *Id.*  Those chat rooms had what the court called "evocative names."  *Id.*  In denying

dismissal, the court pointed out that the complaint relied on allegations that had surfaced in various

---

[1]  "The 'spot market' is essentially the current market, as distinguished from the futures market. Spot transactions in foreign currencies call for settlement within two days."  *Bank Brussels Lambert, SA v. Intermetals Corp.*, 779 F. Supp. 741, 742 (S.D.N.Y. 1991) (Leval, J.).

1   government agency investigations, including those by the Commodity Futures Trading Commission

2   ("CFTC") and the Office of the Comptroller of the Currency ("OCC"), and the court took "judicial

3   notice of penalties and fines levied by regulators . . . as a result of some of the investigations

4   detailed" in the complaint "and for the very conduct alleged" in it.  *Id.* at 588-89, 592.  On separate

5   grounds, the court dismissed two other actions, involving Plaintiffs who traded foreign currency in

6   South Korea and Norway.  *Id.* at 589, 598.

7         The *In re FX* plaintiffs filed a second consolidated amended complaint in July 2015.  Sanders

8   Decl., Ex. C [*In re FX*, Dkt. 368, Second Consolidated Amended Class Action Complaint] ("*In re FX*

9   Compl.").  That complaint, which avers that "New York and London" are "the two largest FX trading

10  centers" (*id.*  ¶ 80), broadens the allegations from those initially presented, including by alleging that

11  "Defendants' conspiracy encompassed: (1) price fixing of bid/ask spreads; (2) price fixing various

12  benchmark rates, including, but not limited to, WM/Reuters benchmark rates . . . ; and (3) other

13  collusive conduct, such as triggering client stop-loss orders and limit orders" (*id.* ¶ 124).  That

14  complaint defines an "FX Instrument" as including "*any* FX spot transaction . . . or other instrument

15  traded in the FX market," and subject to certain exclusions not pertinent here, it defines the putative

16  classes as including "*all* persons who, between January 1, 2003 and December 31, 2013 (inclusive)

17  entered into an FX Instrument directly with a Defendant, where such persons were either domiciled

18  in the United States or its territories or, . . . [if not,] transacted one or more FX instruments in the

19  United States or its territories."  *Id.* ¶ 67 & n.15 (emphases added).

20        After the filing of five additional suits premised on the same alleged conspiracy, the court

21  ordered those additional suits consolidated in August 2015, bringing the total number of actions now

22  consolidated there to 18.  Sanders Decl., Ex. D, [*In re FX*, Dkt. 412 (consolidation order)].  An

23  additional case arising under the same operative facts while alleging violations of the Employee

24  Retirement Income Security Act of 1974 (ERISA) is also assigned to Judge Schofield and is being

25  coordinated with *In re FX* for discovery purposes.

26

27

28

**DEFENDANTS' MOTION TO TRANSFER AND MEMORANDUM IN SUPPORT**

The *In re FX* plaintiffs have announced class action settlements with each of the Defendants in this case or their affiliates.[2]  In addition to oversight of settlement efforts, Judge Schofield's extensive case management activities have included appointment of interim co-lead class counsel for plaintiffs, on two occasions.  Sanders Decl., Exs. B & D.

**2. This Action.**  Nypl is a "California resident," not identified as residing within the boundaries of this District, who commenced this action in May 2015—the only one of the many actions to date alleging antitrust violations in the FX markets not filed in the S.D.N.Y.  Nypl First Amended Complaint ("FAC") ¶ 15; *see* Dkt. 1.  Together with five other named individuals and businesses in Texas, Florida, and Pennsylvania (FAC ¶¶ 16-18), Nypl asserts injury on behalf of a putative class from "pa[ying] foreign currency exchange rates at prices inflated by the foreign-currency exchange rate price-fixing conspiracy over many years" and from "purchas[ing] foreign currency from" Defendants.  FAC ¶ 15; *see id.* ¶¶ 25-31 (listing Defendants, all of whom, or whose affiliates, are defendants in *In re FX*).[3]  Plaintiffs define the class as "[a]ll consumers and businesses in the United States who directly purchased supracompetitive foreign currency exchange rates from Defendants and their co-conspirators for their own end use at least since January 1, 2007 to and including class certification," with certain exclusions.  FAC ¶ 19.  The Complaint does not describe any specific events or transactions that occurred within this District or within California.  Rather, as purported evidence of the alleged conspiracy by Defendants in the FX spot market (FAC ¶¶ 1, 4, 19, 33), Plaintiffs parrot the same allegations made in *In re FX* by pointing to communications between Defendants through specified chat rooms (FAC ¶ 4), and further rely on various regulatory resolutions between the Defendants and government agencies, including the CFTC and the OCC (FAC ¶ 36 & Exs. C, D).

---

[2]  *See, e.g.*, Sanders Decl., Ex. E (Evan Weinberger, *Forex Settlements Hit $2B As Goldman, 4 Others Reach Deals*, Law360, Aug. 13, 2015).

[3]  Defendant HSBC Finance Corporation was not named as a defendant in any of the actions filed in the S.D.N.Y., but its affiliates HSBC Holdings PLC, HSBC Bank PLC, HSBC North America Holdings, Inc., HSBC Bank USA, N.A., and HSBC Securities (USA) Inc. are named as defendants in *In re FX*.  In addition, the *Nypl* First Amended Complaint names as a Defendant "Royal Bank of Scotland," which is not an accurate corporate name and thus it is unclear which entity Plaintiffs intended to name.  The Royal Bank of Scotland Group plc is a defendant in *In re FX*, whereas its wholly-owned subsidiary The Royal Bank of Scotland plc is not.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### III.   <u>ARGUMENT</u>

**Section 1404 Warrants Transfer Because The Balance Of Private And Public Interests Decisively Favors The S.D.N.Y. As The More Convenient Forum.**

Transfer to the S.D.N.Y. would promote "the convenience of parties and witnesses" and "the interest of justice." 28 U.S.C. § 1404(a).  The purpose of Section 1404(a) is to "prevent the waste of time, energy and money and . . . protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964).  That purpose can only be fulfilled here through transfer for possible consolidation with the 18 actions arising from the same operative facts now consolidated in the S.D.N.Y.—cases in which Judge Schofield has already invested appreciable time and energy (including by resolving motions to dismiss and overseeing case management activities), and in which those plaintiffs have announced classwide settlements.  Here, "[t]o permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent." *Ferens v. John Deere Co.*, 494 U.S. 516, 531 (1990) (internal quotation marks omitted).

*First*, as a threshold matter, this action could have been brought in the S.D.N.Y.  All but one of the Defendants correctly named in this action are defendants in *In re FX*.  The sole exception, HSBC Finance Corporation, is alleged to be a Delaware corporation headquartered in Illinois, FAC ¶ 27, and its presence does not defeat jurisdiction or venue in the S.D.N.Y.  *See* Note 3, *supra*.

*Second*, the public and private interest factors strongly support transfer.  Examination of the relevant factors—the most salient of which Defendants address below—demonstrates that transfer to the S.D.N.Y. would be more convenient to the parties and witnesses, and it would promote the "interest of justice" by allowing this action to be treated through possible consolidation or at least coordination with the materially similar cases already pending there.  *See Atl. Marine Constr. Co. v. U.S. Dist. Ct., W. Dist. Tex.*, 134 S. Ct. 568, 581 n.6 (2013) (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)); *Arunachalam v. Pazuniak*, No. 14-cv-5051, 2015 WL 1249877, at *2 (N.D. Cal. Mar. 17, 2015) (citing *Williams v. Bowman*, 157 F. Supp. 2d 1103, 1106 (N.D. Cal. 2001)).

1    **1.      Consolidation With The Other Actions Pending Is Feasible**

2           The "feasibility of consolidation" with other claims is the most important of the

3    Section 1404(a) convenience factors here.  *See A.J. Indus., Inc. v. U.S. Dist. Court for Cent. Dist. of*

4    *Cal.*, 503 F.2d 384, 389 (9th Cir. 1974); *see also Johansson v. Cent. Garden & Pet Co.*, No. 10-cv-

5    03771, 2010 WL 4977725, at *4 (N.D. Cal. Dec. 2, 2010) ("[E]ven where the causes of action are not

6    similar but are based on similar allegations pled in a later-filed action, concerns over judicial

7    efficiency are ***paramount*** in determining whether to transfer a case upon a motion to transfer.")

8    (emphasis added).  A "significant burden on limited judicial resources if transfer is denied" has also

9    been understood as a "potentially ***dispositive factor***" in the transfer analysis.  *Hawkins v. Gerber*

10   *Prods. Co.*, 924 F. Supp. 2d 1208, 1214 (S.D. Cal. 2013) (emphasis added).  "[J]udicial economy will

11   best be served when a trial court defers to a first-filed action."  *Johansson*, 2010 WL 4977725, at *5.

12   The judicial system long has preferred to transfer cases to the venue in which the first-filed action is

13   pending, rather than burdening additional courts with cases that could be heard with the first-filed

14   one.  *See, e.g.*, *Hypower, Inc. v. SunLink Corp.*, No. 14-cv-00740, 2014 WL 1618379, at *2 (N.D.

15   Cal. Apr. 21, 2014) (grounding first-to-file rule in "doctrine of federal comity").

16          The first-to-file rule, coupled with the feasibility of possible consolidation in the S.D.N.Y., is

17   a factor strongly supporting transfer here.[4]  Consolidation is appropriate where actions involve a

18   common question of law or fact.  *See* Fed. R. Civ. P. 42(a); *In re Adams Apple, Inc.*, 829 F.2d 1484,

19   1487 (9th Cir. 1987); *see Devlin v. Transp. Commc'ns Int'l Union*, 175 F.3d 121, 130 (2d Cir. 1999)

20   (consolidation is "a valuable and important tool of judicial administration" that should be "invoked to

21   expedite trial and eliminate unnecessary repetition and confusion") (internal quotation marks

22   omitted).  Putative class actions are often "ideally suited to consolidation because their unification

23   expedites proceedings, reduces duplication, and minimizes the expenditure of time and money by all

24

25

26   ───────────────────────

27   [4]  As it would be appropriate to rely on the first-to-file rule itself to transfer based on comity, *see Meru Networks, Inc. v. Extricom Ltd.*, No. 10-cv-02021, 2010 WL 3464315 at *2 (N.D. Cal. Aug. 31, 2010), that rule certainly "is a compelling public-interest factor that weighs in favor of

28   transfer" to the S.D.N.Y. under Section 1404(a), *see Hypower*, 2014 WL 1618379, at *7.

1   concerned." *Mohanty v. BigBand Networks, Inc.*, No. 07-cv-5101, 2008 WL 426250, at *3 (N.D.

2   Cal. Feb. 14, 2008).[5]

3        By Plaintiffs' own allegations, there is a significant overlap of core facts and legal issues

4   between this action and the *In re FX* cases pending in S.D.N.Y, considering the identity of the

5   Defendants, the overlapping putative classes, and the alleged primary conduct and theory of liability:[6]

6        (a)  <u>Same Defendants</u>.  All Defendants correctly named in this action are defendants in *In re*

7   *FX*, except one HSBC subsidiary (Note 3, *supra*).  *Compare* FAC ¶¶ 25-31 *with In re FX* Compl.,

8   ¶¶ 47-62.

9        (b)  <u>Overlapping Putative Classes</u>.  The proposed classes overlap substantially.  At their core,

10  the members of the putative classes are counterparties to various transactions with the Defendants in

11  the FX Spot market or concerning financial instruments whose prices are determined by those in the

12  FX Spot market.  *Compare* FAC ¶ 19 (defining putative class as "[a]ll consumers and businesses in

13  the United States who directly purchased supracompetitive foreign currency exchange rates from

14  Defendants and their co-conspirators for their own end use at least since January 1, 2007 to and

15  including class certification," with certain exclusions), *with*, *e.g.*, *In re FX* Compl. ¶ 67 & n.15

16  (defining class of over-the-counter buyers as "All persons who, between January 1, 2003 and

17  December 31, 2013 (inclusive) entered into an FX Instrument directly with a Defendant," where an

18  FX Instrument is "*any* FX spot transaction, outright forward, FX swap, FX option, FX futures

19  contract, an option on an FX futures contract, or other instrument traded in the FX market"); Note 1,

20  *supra*.  *Cf. Koehler v. Pepperidge Farm, Inc.*, No. 13-cv-02644, 2013 WL 4806895, at *4 (N.D. Cal.

21

22    [5] *See also In re Facebook, Inc., IPO Sec. & Deriv. Litig.*, 288 F.R.D. 26, 35 (S.D.N.Y. 2012)
      (consolidating cases "on behalf of similar classes, asserted against some of the same defendants,
23    arising out of the same series of events"); *cf. Goldstein v. Puda Coal, Inc.*, 827 F. Supp. 2d 348,
      352-53 (S.D.N.Y. 2011) ("minor differences" in complaints "do not render consolidation
24    inappropriate if the cases present sufficiently common questions of fact and law, and the
      differences do not outweigh the interests of judicial economy served by consolidation").

25    [6] Although Defendants describe the overlap for purposes of possible consolidation with *In re FX*,
      they specifically reserve the right to oppose class certification on all available grounds, *see* Fed.
26    R. Civ. P. 23—including, but not limited to, the absence of common questions susceptible to
      common answers, *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011), and that
27    individual factual and legal issues predominate over any purported common questions, *Comcast
      Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013).

28

1   Sept. 9, 2013) (conducting similar "overlap" analysis of putative class actions under first-to-file rule).

2           (c)   Same Primary Conduct and Theory of Liability.   *Nypl* and *In re FX* both contend that

3   Defendants colluded to set the prices in the FX Spot market.   *Compare* FAC ¶¶ 1, 4, 19, 33 (alleging

4   price fixing in FX Spot market), *with, e.g.*, *In re FX* Compl. ¶¶ 124, 371 ("conspiracy encompassed:

5   (1) price fixing of bid/ask spreads; (2) price fixing various benchmark rates . . . ; and (3) other

6   collusive conduct," and that "collusion necessarily injure[d] participants in the FX market," in that

7   "[a]ll market participants transacting in the FX spot market would be receiving artificially low prices

8   for their currency sales and paying artificially high prices as a result of Defendants' collusion with

9   respect to bid/ask spreads").   *Nypl* and *In re FX* both contend further that communications through

10  specified chat rooms facilitated that conduct.   *Compare* FAC ¶ 4 (referring to those chat rooms), *with,*

11  *e.g.*, *In re FX* Compl. ¶¶ 6, 128, 180 (same).   Still more, *Nypl* and *In re FX* both rely heavily on

12  regulatory resolutions, including those announced in November 2014 by the CFTC and the OCC.

13  *Compare* FAC ¶ 36 & Exs. C, D, *with, e.g.*, *In re FX* Compl. ¶¶ 198 n.83, 200 n.84, 275 n.171, 311-

14  12 (relying on CFTC and OCC assertions).   And upon all of that alleged conduct, *Nypl* and *In re FX*

15  both seek to impose liability based on alleged violations of Section 1 of the Sherman Act.   *Compare*

16  FAC ¶¶ 44-49 (citing 15 U.S.C. § 1), *with In re FX* Compl. ¶¶ 400-12, 419-27 (same).[7]

17          In light of these obviously common factual and legal ties mooring the instant case and *In re*

18  *FX* in the same harbor, a single court presiding over all of the actions will be able to formulate the

19  most efficient pretrial plan to prevent inconsistent rulings, including preliminary and final approval of

20  settlements, and to avoid "duplicative" efforts by all parties.   *W. Digital Techs., Inc. v. Bd. of*

21  *Regents*, No. 10-cv-3595, 2011 WL 97785, at *4 (N.D. Cal. Jan. 12, 2011).   "Judicial resources are

22  conserved when an action is adjudicated by a court that has *already* committed judicial resources to

23  _____

24  [7]   Even if Judge Schofield were to decline to consolidate this action with *In re FX*, transfer to the
    S.D.N.Y. still would be warranted, because the court could at least coordinate treatment of this
25  action with *In re FX*, as Judge Schofield has done with the ERISA action.  *See, e.g.*, *Wireless*
    *Consumers Alliance, Inc. v. T-Mobile USA, Inc.*, No. 03-cv-3711, 2003 WL 22387598, at *4
26  (N.D. Cal. Oct. 14, 2003) ("All that is required is the possible consolidation of discovery or
    witness testimony, whereas actual consolidation of the cases is not necessary."); *Ctr. for Food*
27  *Safety v. Vilsack*, No. 11-cv-00831, 2011 WL 996343, at *10 (N.D. Cal. Mar. 17, 2011)
    (transferring action to court where related action was pending to "avoid inconsistent judicial
28  findings").

the contested issues and is familiar with the facts of the case." *Madani v. Shell Oil Co.*, No. 07-cv-04296, 2008 WL 268986, at *2 (N.D. Cal. Jan. 30, 2008) (internal quotation marks omitted) (emphasis added).  Thus, where, as here, the "allegations are the same," "[i]t is feasible that discovery could be consolidated on that basis, and that weighs in favor of transfer."  *See Johansson*, 2010 WL 4977725, at *5; *see also id.*, at *2 ("concerns over judicial efficiency are ***paramount***") (emphasis added).[8]

### 2.  Party Convenience Favors Transfer

The "relative convenience to all the parties involved in the lawsuit of the competing fora" likewise warrants transfer.  *Flexible Funding, LLC v. Iron Mountain Info. Mgmt.*, No. 05-cv-2082, 2005 WL 2431241 at *3 (N.D. Cal. Sept. 30, 2005).  The "convenience" for Plaintiffs of this District is curtailed by the presence of only one California resident among the five named Plaintiffs (individuals and businesses)—a California resident not even identified as a resident of this District.  FAC ¶ 15 (allegations as to Plaintiff Nypl).  *See Gemini Capital Grp., Inc. v. Yap Fishing Corp.*, 150 F.3d 1088, 1091 (9th Cir. 1998); *Foster v. Nationwide Mut. Ins. Co.*, No. 07-cv-04928, 2007 WL 4410408, at *2-3 (N.D. Cal. Dec. 14, 2007).  The other Plaintiffs reside in Florida, Texas, and Pennsylvania, but those states are either equidistant from or significantly closer to S.D.N.Y. than they are to this District.  *See* FAC ¶¶ 16-18.  This District is therefore not at the "geographic center of gravity of all plaintiffs"—not by a long shot.  *In re Funeral Consumers Antitrust Litig.*, No. 05-cv-01804, 2005 WL 2334362, at *7 (N.D. Cal. Sept. 23, 2005).  And because a majority (or possibly all) of the named plaintiffs reside outside this District, their "choice of forum [is] less significant," *Cung Le v. Zuffa, LLC*, No. 5:14-cv-05484, — F. Supp. 3d —, 2015 WL 3488769, at *6 (N.D. Cal. June 2, 2015).  Moreover, because this is a putative class action on behalf of counterparties across the country to FX spot market transactions with Defendants, the deference owed to Plaintiffs' choice of forum is further diminished.  *See, e.g.*, *Funeral Consumers*, 2005 WL 2334362, at *7 ("plaintiffs' choice of forum is accorded less weight where the action is brought, as here, as a class action, all the

---

[8]  Although plaintiffs in *In re FX* have announced class action settlements with each of the Defendants in this case or their affiliates, to the extent claims remain pending in *In re FX*, they have been slated for coordinated discovery before Judge Schofield.

**DEFENDANTS' MOTION TO TRANSFER AND MEMORANDUM IN SUPPORT**

1   more so when it is brought as a nationwide class action") (citing *Lou v. Belzberg*, 834 F.2d 730, 739

2   (9th Cir. 1987)).  Indeed, the only apparent link between this action and this District is that the offices

3   of Plaintiffs' counsel are here, which is "not an appropriate factor for the Court to consider when

4   deciding a motion to transfer."  *Vu v. Ortho-McNeil Pharm., Inc.*, 602 F. Supp. 2d 1151, 1157 (N.D.

5   Cal. 2009).

6          The convenience of the Defendants, which also must be weighed in the balance, heavily

7   favors transfer.  Defendants here already are litigating before the S.D.N.Y. the same alleged operative

8   facts and legal theories advanced in the instant case, and, indeed, they have been doing so since the

9   commencement of the first of the *In re FX* cases in November 2013.  A transfer is appropriate where,

10  as here, a defendant is "litigating closely related cases" in the transferee forum, thus giving that

11  defendant "a substantial connection to that district."  *See, e.g.*, *SEC v. Roberts*, No. 07-cv-407, 2007

12  WL 2007504, at *4 (D.D.C. July 10, 2007) (finding that transferee venue was a more convenient

13  forum for a defendant already defending a related action in that district).

14         **3.     Witness Convenience Favors Transfer**

15         These cases involve "overlapping evidence, witnesses, and subject matter," and this overlap

16  also strongly favors transfer.  *Cf. King v. Sam Holdings, LLC*, No. 10-cv-04706, 2011 WL 4948603,

17  at *5 (N.D. Cal. Oct. 18, 2011).  Given that all of the cases allege that Defendants participated in a

18  conspiracy to fix exchange rates in the FX Spot market in violation of the Sherman Act, these related

19  actions will necessarily involve common evidence and similar pretrial issues.  Here, although

20  Defendants are not in a position to specify all of the witnesses who would testify if there is a trial in

21  *In re FX*, Plaintiffs' claims here will obviously implicate the testimony of the same current and

22  former bank employees who would be expected to testify in such a trial.  Thus, "transfer would be

23  substantially more convenient for . . . witnesses" because they would avoid "engag[ing] in duplicative

24  litigation or travel to two different forums to attend court proceedings."  *Johansson*, 2010 WL

25  4977725, at *4 (internal quotation marks omitted); *see also W. Digital*, 2011 WL 97785, at *4 (noting

26  need to avoid situation in which "the witnesses and parties would ultimately be required to attend two

27  trials" in different districts).

28

4.      **The S.D.N.Y. Already Has Examined Applicable Law And Alleged Facts**

Although courts in both this District and the S.D.N.Y. are well versed in the Sherman Act, the traditional first-filed rule described above recognizes that it is more efficient to assign an action to the court that has been the frontrunner in developing an understanding of the asserted claims.  On that score, Judge Schofield has not only evaluated, at the motion-to-dismiss stage, a prior consolidated complaint in *In re FX* and the related regulatory resolutions on which the claims rest—as is evident in her published decision denying that motion, 74 F. Supp. 3d 581—but she also has ruled on numerous motions to consolidate other actions into the *In re FX* case, including as recently as August 2015, *see* Sanders Decl., Ex. D.  Plaintiffs have no valid justification for demanding that this Court waste judicial resources by repeating the efforts Judge Schofield has already undertaken to master the factual allegations and legal theories in *In re FX*.  Conversely, "litigating this matter in this forum would squander judicial resources and needlessly require the parties and the courts to duplicate efforts."  *W. Digital*, 2011 WL 97785, at *5; *see Madani*, 2008 WL 268986, at *2.

5.      **Plaintiffs Allege No Meaningful Local Interest in the Controversy**

Transfer is also appropriate because, as recounted above, there is "no significant connection between [the forum] and the facts alleged in the complaint."  *Ventress v. Japan Airlines*, 486 F.3d 1111, 1118-19 (9th Cir. 2007).  New York is the largest FX trading center in the United States (*In re FX* Compl. ¶ 80), and it has obvious connections to this controversy.  In contrast, although Plaintiffs superficially assert that the case concerns California conduct, they have not specifically identified *any* conduct by Defendants in California concerning the alleged conspiracy in the FX spot and related markets.  The regulatory resolutions on which Plaintiffs purport to rely do not offer them any comfort on this point.  Those resolutions centered on allegations as to reference rates calculated at 4:00 p.m. London time, which is before the trading day begins in California, so in-state trading activity cannot have determined those calculations.  And Plaintiffs further undercut their own bid to depict the case as involving a "significant connection" with California, *Ventress*, 486 F.3d at 1118, by describing a putative *nationwide* class on whose behalf they seek recovery.  FAC ¶ 19.  There is no tie between this case and California that could overcome the weighty interests in avoiding duplication and waste—interests that counsel recognition for Judge Schofield's investment of  considerable energy

**DEFENDANTS' MOTION TO TRANSFER AND MEMORANDUM IN SUPPORT**

1   not only in evaluating the factual allegations and legal theories pressed in the 18 actions there

2   consolidated, but also in the case management process (including by evaluating and appointing

3   interim co-lead counsel for the putative classes, and overseeing discussions concerning settlement).

4   Rather, the proper course is to follow the long-settled first-filed rule, which here serves the "interest

5   of justice" as a whole.

6          Finally, Defendants note that under the Stipulation filed on August 14, 2015 (Dkt. 10),

7   Defendants have reserved the right to challenge personal jurisdiction in the Northern District of

8   California.  This Court may transfer venue without addressing "the nonmerits threshold question of

9   personal jurisdiction."  *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431-33

10  (2007); *see W. Digital Techs.*, 2011 WL 97785, at *6 n.3 ("Because the Court has determined that

11  transfer is appropriate, it does not reach the personal jurisdiction . . . arguments"); *accord McGraw-*

12  *Hill Cos. v. Jones*, No. 12-cv-7085, 2014 WL 988607 at *5, 10 (S.D.N.Y. Mar. 12, 2014) (citing *Fort*

13  *Knox Music, Inc. v. Baptiste*, 257 F.3d 108, 112 (2d Cir. 2001)); *Taylor v. Shinseki*, 13 F. Supp. 3d

14  81, 85, 89 (D.D.C. 2014); *La Casa Real Estate & Inv., LLC v. KB Home of S.C., LLC*, No. 1:09-cv-

15  895, 2010 WL 2649867, at *1-2 (M.D.N.C. June 30, 2010); *see also Atl. Marine*, 134 S. Ct. at 580.

16  ## IV.   **CONCLUSION**

17         For the foregoing reasons, this case should be transferred to the Southern District of New

18  York.

19  DATED: September 9, 2015                 Respectfully submitted,
20                                           GIBSON, DUNN & CRUTCHER LLP

21                                           By: /s/ Joel S. Sanders

22                                           Joel S. Sanders
                                             555 Mission Street, Suite 3000
23                                           San Francisco, CA 94105-2933
                                             Telephone: (415) 393-8200
24                                           Facsimile: (415) 393-8306
                                             jsanders@gibsondunn.com

25                                           ***Attorneys for Defendant UBS AG***

26
27  / / /

28

**DEFENDANTS' MOTION TO TRANSFER AND MEMORANDUM IN SUPPORT**

1    DATED: September 9, 2015    SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

2                    By: /s/ Peter E. Greene

3                    Peter E. Greene
                     Boris Bershteyn

4                    Peter S. Julian
                     Four Times Square

5                    New York, NY 10036
                     Telephone:  (212) 735-3000

6                    Facsimile:  (212) 735-2000
                     peter.greene@skadden.com

7                    boris.bershteyn@skadden.com
                     peter.julian@skadden.com

8

9                    Douglas A. Smith
                     300 South Grand Avenue, Suite 3400

10                  Los Angeles, CA 90071
                     Telephone: (213) 687-5000

11                  Facsimile: (213) 687-5600

12                  ***Attorneys for Defendants JPMorgan Chase & Co. and JPMorgan Chase Bank, N.A.***

13    DATED: September 9, 2015    SHEARMAN & STERLING LLP

14

15                    By:  /s/Stephen D. Hibbard

16                    Stephen D. Hibbard (SBN 177865)
                     525 Market Street, Suite 1500

17                  San Francisco, CA 94105
                     Telephone: (415) 616-1100

18                  Facsimile: (415) 616-1199
                     shibbard@shearman.com

19

20                  Adam S. Hakki
                     Richard F. Schwed

21                  Jeffrey J. Resetarits
                     599 Lexington Avenue

22                  New York, New York 10022
                     Telephone: (212) 848-4000

23                  Facsimile: (646) 848-7179
                     ahakki@shearman.com

24                  rschwed@shearman.com
                     jeffrey.resetarits@shearman.com

25                  ***Attorneys for Defendants Bank of America Corporation and Bank of America, N.A.***

26

27

28

Gibson, Dunn & Crutcher LLP

**DEFENDANTS' MOTION TO TRANSFER AND MEMORANDUM IN SUPPORT**

| | | |
|---|---|---|
| 1 | DATED: September 9, 2015 | LOCKE LORD LLP |
| 2 | | By:  /s/ Regina J. McClendon |
| 3 | | Regina J. McClendon |
| | | 44 Montgomery Street, Suite 4100 |
| 4 | | San Francisco, CA  94104 |
| | | Telephone:  (415) 318-8804 |
| 5 | | rmcclendon@lockelord.com |
| 6 | | J. Matthew Goodin (*pro hac vice*) |
| | | 111 S. Wacker Drive |
| 7 | | Chicago, Illinois 60606 |
| | | Telephone:  (312) 443-0472 |
| 8 | | jmgoodin@lockelord.com |
| 9 | | ***Attorneys for Defendants HSBC Finance Corporation, HSBC Bank USA, N.A., HSBC North America Holdings, Inc., and HSBC Holdings plc*** |
| 10 | | |
| 11 | | |
| | DATED: September 9, 2015 | COVINGTON & BURLING LLP |
| 12 | | |
| | | By:  /s/ Tammy Albarrán |
| 13 | | |
| 14 | | Tammy Albarrán |
| | | One Front Street |
| 15 | | San Francisco, CA 94111-5356 |
| | | Telephone: (415) 591-7066 |
| 16 | | talbarran@cov.com |
| 17 | | ***Attorneys for Defendant Citigroup Inc.*** |
| 18 | | |
| | DATED: September 9, 2015 | DAVIS POLK & WARDWELL LLP |
| 19 | | |
| | | By:  /s/ Neal A. Potischman |
| 20 | | |
| 21 | | Neal A. Potischman (SBN 254862) |
| | | 1600 El Camino Real |
| 22 | | Menlo Park, CA 94025 |
| | | Telephone: (650) 752-2000 |
| 23 | | Facsimile: (650) 752-2111 |
| | | neal.potischman@davispolk.com |
| 24 | | Joel M. Cohen (*pro hac vice*) |
| | | 450 Lexington Avenue |
| 25 | | New York, New York 10017 |
| | | Telephone: (212) 450-4000 |
| 26 | | Facsimile: (212) 450-4800 |
| | | joel.cohen@davispolk.com |
| 27 | | |
| | | ***Attorneys for Defendant The Royal Bank of Scotland plc*** |
| 28 | | |

1
2
DATED: September 9, 2015          SULLIVAN & CROMWELL LLP

By: /s/Adam S. Paris

3
4
Adam S. Paris
John D. Echeverria
1888 Century Park East
5
Los Angeles, California 90067-1725
Telephone: (310) 712-6600
6
Facsimile: (310) 712-8800
parisa@sullcrom.com
7
echeverriaj@sullcrom.com

8
***Attorneys for Defendant Barclays Bank PLC***

9
10
Pursuant to Local Rule 5-1(i), the filer attests that the concurrence in the filing of this document has
11
been obtained from each of the above signatories.

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Gibson, Dunn &
Crutcher LLP

**DEFENDANTS' MOTION TO TRANSFER AND MEMORANDUM IN SUPPORT**

1

**DECLARATION OF SERVICE**

2

I, Joel S. Sanders, declare as follows:

3

I am employed in the County of San Francisco, State of California; I am over the age of eighteen years and am not a party to this action; my business address is 555 Mission Street, Suite 3000, San Francisco, California, 94105, in said County and State.  On the date below, I served the within:

4

5

6

**DEFENDANTS' NOTICE OF MOTION AND MOTION TO TRANSFER UNDER 28 U.S.C. § 1404 AND MEMORANDUM IN SUPPORT**

7

to all named counsel of record as follows:

8

 **BY ECF (ELECTRONIC CASE FILING)**:  I e-filed the above-detailed documents utilizing the United States District Court, Northern District of California's mandated ECF (Electronic Case Filing) service on September 9, 2015.  Counsel of record are required by the Court to be registered e-filers, and as such are automatically e-served with a copy of the documents upon confirmation of e-filing.

9

10

11

I certify under penalty of perjury that the foregoing is true and correct, that the foregoing document(s) were printed on recycled paper, and that this Declaration of Service was executed by me on September 9, 2015, at New York, New York.

12

13

_____/s/ *Joel S. Sanders*_____
Joel S. Sanders

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Gibson, Dunn & Crutcher LLP